IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | CRIMINAL NO.: <u>22-CR-1560-KG</u> |
| **JASON ROSS-LATTION FLEMING**, | ) | |
| Defendant. | ) | |

## <u>UNITED STATES' OBJECTIONS AND CORRECTIONS TO THE PRESENTENCE REPORT AND SENTENCING MEMORANDUM</u>

Jason Ross-Lattion Fleming is a repeat and dangerous sexual predator who has demonstrated that he poses a grave danger to children when out of custody. Accordingly, the United States requests this Court sentence Fleming to a sentence of 45 years imprisonment, a sentence that is necessary to satisfy the goals of 18 U.S.C. § 3553(a).

1. **<u>Procedural Background</u>**

Fleming was charged by criminal complaint on April 22, 2022, and has been in federal custody since that date. Doc. 1. A federal grand jury subsequently charged Fleming in a five-count Indictment with production of a visual depiction of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2251(a); possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B); coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b); transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(1); and providing child pornography to a minor, in violation of 18 U.S.C. § 2252A(a)(6)(a). Doc. 25. On April 6, 2023, Fleming pleaded guilty to Count One of the Indictment, production of a visual depiction of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2251(a) and Count Five of the Indictment, providing child pornography to a minor, in violation of 18

U.S.C. § 2252A(a)(6)(a). Doc. 42. Per the plea agreement, the government will move at sentencing to dismiss Count Two through Four of the Indictment. *Id*.

2. **Factual Background**

    A. Sexual Activity with DOE 2

On April 12, 2022, Homeland Security Investigations (HSI) received information from New Mexico State Police (NMSP) regarding an incident that occurred involving a 10-year-old minor in Pinon, New Mexico. The 10-year-old minor (DOE 2) reported that a family friend, identified as Jason Fleming, molested her while she was visiting her dad in New Mexico. Fleming was an Alamogordo firefighter at the time.

During a forensic interview, DOE 2 revealed the following:

> DOE 2 stated she is 10 years old and in 4th grade. DOE 2 believed she was in the interview because of what Fleming had done to her. DOE 2 further explained Fleming had done weird things that she doesn't understand. DOE 2 stated that prior to March of 2021, she was residing with her father in New Mexico. DOE 2 stated during that time, she visited Fleming on weekends. She also stated Fleming was a firefighter, and he has a ranch where she would stay.

> DOE 2 disclosed the first time something happened with Fleming was when she was nine years old. DOE 2 disclosed the first time, she did not touch "it" but that they were watching Snow White and the Seven Dwarfs at Fleming's house, in his loft bedroom. DOE 2 disclosed that while watching the movie, Fleming "brought it out" and asked if she wanted to touch it. DOE 2 clarified he took his "nuts" out. DOE 2 told him "no" and walked away. Fleming told her not to tell anyone. DOE 2 disclosed the second time something happened, he was "rubbing" her with "it." DOE 2 stated she loves Reese's candy and that he would ask her to do "this" (she made an up and down motion with her right hand and arm during the interview) if she wanted some Reese's. DOE 2 said she was in the loft again when this happened.

> DOE 2 disclosed Fleming would "tuck it" when he would leave the loft to get her candy in case anyone was downstairs. She stated in the loft, he would play a movie and they would act like they were watching a movie while they "did it." When Fleming asked her if she wanted Reese's, he told DOE 2 she would have to "do this" and showed her videos. She stated she had previously seen the videos on his phone during a vehicle ride, the first time she went to his ranch. DOE 2 described the videos as people "doing this" (made an up and down

motion with her hand) and putting "it" in their mouth. DOE 2 disclosed most of the people in the videos were kids. She also saw a video of Fleming and his first wife "doing it." She said there were also videos of sisters and brothers doing it, man and toddler, and tons of man and girl videos. She stated the girls were around her age. DOE 2 said she watched the video on the "vault."

DOE 2 also gave additional details about a time that Fleming had her put her hand on his "nuts," and disclosed that, one of the times, Fleming made her hand go "super fast" and white stuff came out. DOE 2 stated the white stuff went on the rug that was on the floor. DOE 2 stated she avoids that spot because it grosses her out. DOE 2 disclosed before the white stuff came out, Fleming said "here it comes."

Based on the information detailed above, NMSP obtained a state district court search warrant for Fleming's residence, cellphones, and buccal swabs containing Fleming's DNA. On December 9, 2021, NMSP executed the warrant and seized a cutout of the carpet in the area that DOE 2 indicated Fleming had ejaculated on the carpet (stains were identified on the carpet using a blacklight), two cellphones from Fleming, and buccal swabs containing Fleming's DNA. The seized cellphones included a black Sonim work cellphone and a black Samsung cellphone, which was identified as Fleming's personal cellphone.

NMSP submitted the carpet cutout and Fleming's buccal swabs to the New Mexico Department of Public Safety Forensic Laboratories for analysis. The lab report shows that semen was detected on the carpet, and the DNA contained in the semen on the carpet matched Fleming's DNA.

NMSP police learned from DOE 2 that the abuse began after her father and his ex-girlfriend broke up, which was at the beginning of January 2021. NMSP also learned that DOE 2 stayed with her mother in Texas after March 2021, so NMSP was able to determine the sexual abuse occurred between January-March 2021.

On April 18, 2022, HSI obtained and executed a follow-up federal search warrant on Fleming's Samsung cell phone and identified numerous child pornography images, including

child pornography images involving infants and toddlers. The identified child pornography materials were contained within the thumbnail cache of a "GalleryVault" application (app)—matching DOE 2's description of Fleming showing her the videos of child pornography in "the vault." The GalleryVault app automatically backs up material to the cloud, therefore accessing the Internet.

B. <u>Sexual Activity with DOE 1</u>

While reviewing the extraction of Fleming's cellphone, HSI located sexually explicit videos and photographs of Fleming and a teenage girl. Agents learned that Fleming previously married DOE 1 on December 1, 2012, four months after she turned 16. Fleming and DOE 1 divorced July 9, 2013, while DOE 1 was still 16. HSI Agents interviewed DOE 1 and learned the following:

> In about the summer of 2012, when DOE 1 was about 15 years old, and Fleming was about 26 years old, Fleming befriended DOE 1 on a social media website, possibly Facebook. DOE 1 said she and Fleming developed a relationship, and Fleming began picking her up from her house to hang out. DOE 1 said the second time they hung out, Fleming engaged in sexual intercourse with DOE 1. DOE 1 said Fleming then began staying with DOE 1 and her mother at their home while DOE 1 and Fleming continued their sexual relationship.
>
> One day, Fleming told DOE 1 and her mother that someone at the fire department in Alamogordo, where he worked, found out about DOE 1 and Fleming's relationship and he was afraid he would lose custody of his daughter. DOE 1's mother, who DOE 1 believed was also having a sexual relationship with Fleming, suggested that Fleming and DOE 1 get married so the relationship would become legal. DOE 1 said she did not want to get married but did so at her mother and Fleming's insistence.
>
> DOE 1 said Fleming took sexually explicit photographs of her both before they were married and during their marriage on his cellphone and using spy cameras that he had set up around the house. DOE 1 said Fleming had an application that looked like a calculator on his cellphone where he kept the sexually explicit photographs of DOE 1.

The extraction of Fleming's phone contained hundreds of photographs of child pornography stored in the cache of the GalleryVault app. An HSI forensic analyst was able to access

Fleming's GalleryVault app, which contained dozens of sexually explicit videos and photographs of DOE 1 in a folder labeled "whore." Within the GalleryVault app were numerous depictions of DOE 1 engaging in fellatio and other sex acts with Fleming, most of which appear to have been taken on a cellphone while some appear to have been taken with a "spy camera" type camera, as DOE 1 described.

Additionally, Fleming created bizarre collages that included images of him engaging in sexual relations with DOE 1 and images of him engaging in sexual acts with DOE 1's mother and labeled them things like "daughter" over DOE 1 and "mother" over her mother. Fleming created other collages using the child pornography containing DOE 1 in which he created labels with words like "whore" and "slut" above DOE 1. The EXIF data on these images, indicates that Fleming continued manipulating the photographs in different ways, including creating the collages and adding labels and other items to the photographs, until close in time to his arrest.

### C. Fleming's Admissions

At the change of plea hearing and in his signed plea agreement, Fleming admitted the following:

> Between on or about February 1, 2012, until December 1, 2013, I persuaded and induced a minor, who is referred to as Jane Doe 1 in the indictment, to engage in sexually explicit conduct for the purpose of producing an image of that conduct. Specifically, I took pictures of Jane Doe 1 in which her vagina was the focal point of the photo. I also took videos in which Jane Doe 1 and I are engaged in vaginal intercourse. I recognize that these pictures and videos constitute sexually explicit conduct pursuant to 18 U.S.C. § 2256. I took these pictures and videos with my cell phone, which was manufactured outside the United States. Accordingly, I recognize the interstate nexus element for this count is satisfied.

> Beginning in January 2021, continuing through March 2021, I would babysit a then nine-year-old minor, who is referred to as Jane Doe 2 in the indictment. During that time, I used my cell phone to connect to the internet to access an application where I had child pornography stored. I showed Jane Doe 2 videos of child pornography that included videos of minors stroking adult male penises and minors performing fellatio on adult males. In order to access the videos in question I had to connect to the internet Accordingly, I recognize the interstate nexus element for this count is satisfied.

### 3. Objections and Corrections to the Presentence Report

Paragraph 75 of the Presentence Report (PSR) states:

> Based upon a total offense level of 43 and a criminal history category of I, the guideline imprisonment range is life. However, the statutorily authorized maximum sentences are less than the minimum of the applicable guideline range; therefore, the guideline term of imprisonment is 30 years as to Count 1 and 20 years as to Count 5, for a total term of **30 years (360 months)**. USSG §5G1.2(b).

Paragraph 75 should read:

> Based upon a total offense level of 43 and a criminal history category of I, the guideline imprisonment range is life. However, the statutorily authorized maximum sentences are less than the minimum of the applicable guideline range; therefore, the guideline term of imprisonment is 30 years as to Count 1 and 20 years as to Count 5, for a total term of **50 years (600 months)**. USSG §5G1.2(b).

Paragraph 76 states:

> The defendant entered a guilty plea as charged in the **Information**. If the defendant were convicted at trial of all Counts of the **Information** his statutory penalties would be no more than 30 years as to Count 1 and no more than 20 years as to **Count 2**.

Paragraph 76 should read:

> The defendant entered a guilty plea as charged in the **Indictment**. If the defendant were convicted at trial of all Counts of the **Indictment**, his statutory penalties would be no more than 30 years as to Count 1 and no more than 20 years as to **Count 5**.

### 4. Request for 45-Year Sentence

The government respectfully requests that the Court sentence Fleming to 45 years of imprisonment. Based upon a total offense level of 43 and a criminal history category of I, Fleming's guideline imprisonment range is life. PSR ¶ 75. However, the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range; therefore, the advisory guideline term of imprisonment is 50 years. *Id*. Pursuant to the plea agreement in this case, the maximum sentence the Court can impose, should the Court accept the plea agreement,

is a sentence of 45 years imprisonment. A sentence of 45 years is a downward variance from the low-end of Fleming's properly calculated advisory guideline range of 50 years imprisonment, and no further downward variance is warranted, given the facts of this case. A sentence of 45 years provides for a sentence that satisfies the factors of 18 U.S.C. § 3553(a) and does not represent a sentence unmoored from the recommendations of the Sentencing Guidelines.

   A. <u>18 U.S.C § 3553(a)(1): The Nature and Circumstances of the Offense and Fleming's History and Characteristics</u>

The nature and circumstances of Fleming's crimes represent some of the most reprehensible conduct an individual can engage in, namely the sexual abuse of children. Unfortunately, while often thought of as resilient, children rarely fully recover from the trauma of sexual abuse. *See* A. Perry and D. DiLillo, Child Sexual Abuse, 147, in N.A. Jackson, Encyclopedia of Domestic Violence, (2007). Sexual trauma can affect the neurobiology of children, and such young victims of sexual abuse have more problems with anxiety, high-strung temperament, speech and language delay, inattentiveness, hyperactivity, and are at higher risk for mood disorders. *Id*. While short term effects of sexual abuse include fear, anxiety, anger, depression, and sexually inappropriate behavior, long-term effects include self-destructive behavior, tendency toward revictimization, substance abuse, and sexual maladjustment. *Id*.

All sexual exploitation of children is despicable, but there is something particularly disturbing about Fleming creating child pornography with one child victim and then using that child pornography, as well as candy, to entice and sexually exploit his other young victim. Also particularly disturbing is Fleming's labeling of the folders in which he stored the child pornography he created of DOE 1 as "whore" and adding labels to said child pornography in which he labels DOE 1 as "whore" and "slut." Fleming refers to DOE 1 as a "whore" and a "slut." That is how Fleming feels about children—they are sexual objects to him, objects with

which he believes he can do as he pleases. But these children are not objects, they are living, breathing children whose lives will be forever marred by the sexual exploitation they experienced at the hands of Fleming.

While Fleming has no prior criminal history, he is a prime example of someone who has no criminal convictions and yet has been leading a life a crime—destroying children's lives by sexually exploiting them for well over a decade. Fleming attempted to cover up his sexual abuse of DOE 1 by marrying her at 16 years old, incorrectly believing that he could do as he wished to DOE 1, so long as they were married. Unfortunately, this cover up worked for nearly a decade, resulting in DOE 2 also being sexually exploited before Fleming was finally caught and held accountable for his crimes. Given the many years Fleming sexually abused these young girls, Fleming's history and characteristics are very much intertwined with the egregious offense conduct in this case.[1]

The reprehensible nature and circumstances of Fleming's repeated sexual abuse of these two children and his history and characteristics all support a sentence of 45 years of imprisonment.

B. 18 USC § 3553(a)(2)(a): To Reflect the Seriousness of the Offense, Promote Respect for the Law, and to Provide Just Punishment

The criminal conduct at issue here is the repeated sexual abuse of multiple children. Therefore, the question for the Court is, what sentence reflects the seriousness of these heinous

---

[1] The United States anticipates that DOE 2's mother, and even perhaps DOE 2, will be present at sentencing, and the Court will have an opportunity hear directly about how Fleming's horrific crimes have affected their lives. DOE 1, however, is trying her best to put this behind her and likely will not be at the hearing. It is difficult to grasp just how much Fleming's abuse has truly affected DOE 1. Both AUSAs in this case have met with her in person, and she is truly scarred and traumatized from Fleming's abuse of her. DOE 1 has spent years trying to put the abuse behind her and was mortified when she found out that Fleming abused another child and further mortified to learn Fleming still possessed child sexual exploitation material of her. Though she likely will not be at sentencing, there should be no doubt that Fleming has inflicted a permanent scar of abuse that DOE 1 will carry with her for the rest of her life.

crimes and provides just punishment for crimes that will have lifelong impacts on both child victims? Anything less than 45 years is inadequate to reflect the seriousness of Fleming's crimes and and to provide just punishment for the harms he has inflicted upon his young victims.

A sentence of 45 years not only reflects the seriousness of the offense and provides just punishment, but it also promotes respect for the law. A sentence of 45 years of imprisonment sends a strong message that sexually abusing children will not be tolerated and offenders will be punished accordingly.

### C. 18 USC § 3553(a)(2)(b): To Afford Adequate Deterrence to Criminal Conduct

A 45-year sentence affords adequate deterrence to future criminal conduct  It has been observed that pedophiles do not follow the same pattern of "aging out" like other offenders:

> "In a study that examined the relationship between age and types of sexual crimes, Dickey (et al) found that up to 44% of pedophiles in their sample of 168 sex offenders were in the older adult age range (age, 40-70 years). When compared with rapists and sexual sadists, pedophiles comprise 60% of all older offenders, indicating that **pedophiles offend in their later years at a greater rate than other sexual offenders**."

*See* Ryan C.W. Hall & Richard C.W. Hall, *A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues*, 82 Mayo Clinic Proc. 457, 458 (2007)(emphasis added). Considering Fleming's history and what is known generally about those who offend against children, a shorter term would provide inadequate deterrence. Furthermore, a recidivism study, specific to sex offenders, has concluded that there is no empirical basis to account for age in sex offenders when assessing future risk of reoffending. G. Harris and M. Rice, *Adjusting Actuarial Violence Risk Assessments Based on Aging or the Passage of Time,* 34 Crim. J. and Behav., 310-11, (2007). Unfortunately, Fleming's age at the time of release is no indication that he will not remain a risk to the community upon his release.

As for deterring other offenders who might be tempted to engage in similar behavior, general deterrence is crucial. Accordingly, a sentence of 45 years would afford adequate deterrence to future criminal conduct.

    D.  <u>18 USC § 3553(a)(2)(C): To Protect the Public from Further Crimes of Fleming</u>

Given Fleming's history and his escalating sexual conduct toward minors, the need for a sentence that protects the public—and more specifically children—from Fleming is apparent. By Fleming's own admission, he has repeatedly sexual exploited two children over a span of nearly 10 years. Fleming did not stop at destroying one young girl's life for his own deviant pleasures, instead he destroyed two young girls' lives. In light of this, there can be little doubt that Fleming is not someone who is amenable to rehabilitation, and that children are in danger when Fleming is out of custody. A sentence of 45 years is essential to protect the public from Fleming's future crimes.

    **5.  <u>Conclusion</u>**

Fleming is a sexual predator who poses an extreme danger when he is out of custody. Fleming's disturbing repeated sexual abuse of the children in this case will impact these victims for the rest of their lives. A sentence of 45 years of imprisonment is necessary to satisfy the goals of 18 U.S.C. § 3553(a).

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
Acting United States Attorney


***/s/ Electronically Filed 1/5/2024***
MATILDA McCARTHY VILLALOBOS
MARISA A. ONG
Assistant U.S. Attorneys
200 N. Church Street
Las Cruces, NM  88001
(575) 522-2304 - Tel.
(575) 522-2391 – Fax

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification to defense counsel of record.

***Electronically Filed 1/5/2024***
MATILDA McCARTHY VILLALOBOS
Assistant U.S. Attorney