IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO.: 22-CR-1560-KG |
| | ) | |
| **JASON ROSS-LATTION FLEMING**, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT

Jason Ross-Lattion Fleming, a repeat and dangerous child sex offender, objects to multiple sentencing enhancements contained in the Presentence Report ("PSR") that were properly applied to his total offense level and asks the Court to sentence Fleming to something less than the 45 years requested by the government, although it is unclear to what specific sentence Fleming is requesting the Court sentence him. *See* Doc. 63. The Court should overrule Fleming's objections, since each enhancement properly applies, and the Court should sentence Fleming to the 45 years of imprisonment requested in the Government's Sentencing Memorandum. *See* Doc 62.

In his Objections to the Presentence Report, Fleming objects to the seven-level enhancement for distribution of child pornography to a minor and the two-level enhancement for use of a computer. Doc. 63. Fleming asserts that if the Court granted those two objections, which total nine points when combined, Fleming's total offense level would be a 32 with an advisory guideline range of 121-151 months. *Id*. It is unclear to the government how Fleming reached those numbers. If the Court sustained both of Flemings objections, his total offense level for Count 1 would be 34, and his total offense level for Count 5 would be 38 (not 33 as Fleming

asserted). Based on the counts not grouping since they involve different victims and different harms, two-levels would be added to the highest offense level, resulting in an offense level 40. After subtracting three points for acceptance of responsibility, Fleming's total offense level would become 37, with a criminal history category I, resulting in an advisory guideline range of 210-262 months. However, the Court should overrule Fleming's objections, resulting in a properly calculated guideline range of 50 years.[1] Pursuant to the plea agreement in this case, the maximum sentence the Court can impose, should the Court accept the plea agreement, is a sentence of 45 years of imprisonment. A sentence of 45 years is a downward variance from the low-end of Fleming's properly calculated advisory guideline range of 50 years imprisonment, and no further downward variance is warranted, given the facts of this case.

1. **Distribution Enhancement**

USSG § 2G2.2(b)(3) states, "If the offense involved distribution to a minor that was intended to persuade, induce, entice, coerce, or facilitate … the minor to engage in prohibited sexual conduct, increase by 7 levels." The commentary to § 2G2.2 explains that distribution means, "any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant." Notably, the definition in the commentary of distribution has no requirement that the distribution occur through interstate commerce, and the commentary does not go on to define distribute, production, transmission, advertisement, and transportation.

---

[1] Based upon a total offense level of 43 and a criminal history category of I, Fleming's guideline imprisonment range is life. PSR ¶ 75. However, the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range; therefore, the advisory guideline term of imprisonment is 50 years. *Id*.

Without a definition of each of these terms in the commentary, we must use common definitions to understand these terms. Merriam-Webster defines the verb "distribute" as "to give out or deliver especially to members of a group." Merriam-Webster defines the verb "transmit as "to send or convey from one person or place to another." Merriam-Webster defines the verb "transport" as "to transfer or convey from one place to another."

According to DOE 2's forensic interview, on one occasion, Fleming gave DOE 2 his phone, directed her to a specific app, told DOE 2 the password for the app and had her input said password, and had DOE 2 watch videos of child pornography within the app, thereby transmitting the videos of child pornography to DOE 2. On another occasion, Fleming showed DOE 2 videos of child pornography on his phone and told her "you have to do this," requiring DOE 2 perform the sexual acts on Fleming that occurred in the child pornography he transmitted to DOE 2. Fleming transmitted the videos of child pornography to DOE 2 to persuade, induce, entice, coerce DOE 2 to engage in prohibited sexual acts with Fleming.

Fleming seems to argue that because he did not send the child pornography to DOE 2 through traditional means like the mail, email, or social media, and he did not post the child pornography on a website, he could not have distributed, transmitted, or transported the child pornography to DOE 2. But nothing in the commentary indicates a defendant must send the child pornography in such a manner, simply transmitting the child pornography to the minor by giving the minor a phone and directing the minor how to access the child pornography within an application on the phone is sufficient to demonstrate that the defendant transmitted the child pornography to the minor.

The base offense level for providing child pornography to a minor does not require that the providing of the child pornography have been done in an attempt to persuade, induce, entice,

coerce said minor to engage in prohibited sexual acts. Rather, the base offense level is merely for showing the child pornography to the minor. It seems apparent with the enhancement contained in § 2G2.2(b)(3) that the Sentencing Commission was attempting to more harshly punish defendants who not only show minors child pornography but do so in an attempt to persuade, induce, entice, coerce said minor to engage in prohibited sexual acts. Therefore, it logically follows that Fleming should not be punished for merely showing the child pornography to DOE 2, but rather, he should be held accountable for the more egregious conduct of providing the child pornography to DOE 2 in an attempt to persuade, induce, entice, coerce DOE 2 to engage in prohibited sexual acts, which Fleming successfully did.

The government requests the Court make the following findings in overruling Fleming's objection to the seven-level enhancement:

- Fleming distributed child pornography to DOE 2, a minor, to persuade, induce, entice, or coerce DOE 2 to engage in prohibited sexual acts with Fleming when Fleming distributed and transmitted the child pornography to DOE 2 by giving DOE 2 a cellphone, directing DOE 2 to the VaultApp within his phone, and then providing DOE 2 the password to access the VaultApp to view the child pornography. Fleming later told DOE 2 that she had to do the things to Fleming that were contained in the child pornography Fleming transmitted to DOE 2.

    **2. Use of a Computer Enhancement**

The Court should apply the use of a computer enhancement because Fleming provided DOE 2 child pornography on a smartphone, which is a computer. *See* USSG § 2G2.2(b)(6).

There is no dispute that certain enhancements apply in nearly every child pornography case. Following the passage of the PROTECT Act in 2003, the U.S. Sentencing Commission

conducted numerous studies regarding the Guidelines, including use of a computer by offenders and implementing appropriate base offense levels. As Fleming correctly notes, the computer enhancement was found to have applied to nearly all non-production child pornography offenses. Where Fleming errs, however, is assuming this should result in a downward variance or departure.[2] The Commission utilized the information gleaned from the various studies when establishing the Guidelines for child pornography offenses and made it clear that it took into account the frequent use of the child pornography enhancements when it set the base offense levels.

Additionally, the fact that certain enhancements apply on a frequent basis does not serve as a basis for negating the Guidelines. Courts typically do not provide deference to a defendant simply because he chooses the most convenient and common way to commit a crime. Robberies and carjackings are most frequently facilitated with firearms, however, courts do not deduct the firearm enhancement under § 2B3.1(b)(2)(B) simply because the most common tool was used in the offense. This Court should therefore not alter its sentence simply because advancing technology has made the use of a computer the easiest and most frequently used method of accessing and downloading child pornography.

In addition to the fact that the U.S. Sentencing Commission has factored in the § 2G2.2 enhancements when creating the guidelines and has continued to include them in subsequent guideline manuals, Circuit Courts across the country have consistently "rejected the idea that the enhancement should be ignored because it so frequently applies." *United States v. Walters*, 775 F.3d 778, 786 (6th Cir. 2015). Simply put, the argument that "computers are present in every

---

[2] This argument by Fleming, while entitled "objection," seems to be more of a policy argument for a downward variance rather than an actual objection to the proper calculation of Fleming's guideline range, since Fleming never articulates a basis to support this enhancement not applying.

case does not begin to approach the showing necessary for a court to decline to apply § 2G2.2 out of hand." *United States v. Bistline*, 720 F.3d 631, 633 (6th Cir. 2013) (quoting *United States v. Bistline*, 665 F.3d 758, 764 (6th Cir. 2012) (vacating a sentence imposed by a district court that had accepted a similar argument regarding this § 2G2.2 enhancement) (cleaned up).

The argument that § 2G2.2 enhancements are double-counting or in the alternative should not be considered or greatly discounted because it applies in virtually every case is also "meritless" and has been rejected by the 10th Circuit Court of Appeals on multiple occasions. *United States v. Traufield*, 768 F. App'x 802, 809 (10th Cir. 2019); *see also United States v. Miller*, 318 F. App'x 701, 702-03 (10th Cir. 2009) (unpublished) (concluding that there was no improper double counting of criminal conduct because the defendant "could have been sentenced under § 2G2.2(a)(2) without having used a computer" and therefore "enhancing punishment for that specific and additional conduct is not prohibited").

In accordance with the history of the Sentencing Commission's construction USSG § 2G2.2 and appellate caselaw, the Court should maintain the USSG § 2G2.2(b)(6) use-of-a-computer enhancement in Fleming's case.

3. **DOE 2**

Fleming's argument in his sentencing memoranda as to DOE 2 is unclear to the government. Fleming states that Fleming only pled guilty to a "hands off offense" as to DOE 2, so the Court should not consider the hands-on offense involving Fleming forcing DOE 2 to perform fellatio on Fleming and to masturbate Fleming. As the government interprets the argument, it is meritless for multiple reasons.

First, the hands-on conduct during which Fleming forced DOE 2 to masturbate him and put his penis in her mouth is relevant conduct. The Sentencing Guidelines define "offense" as the

offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context. No other meaning of offense is specified in the relevant guideline provision § 2G2.1. Relevant conduct is defined as "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1); *See also United States v. Wilson*, 17 F.4th 994, 1001 (10th Cir. 2021) ("Subdivision(a)(1)(A) [of § 1B1.3(a)] encompasses 'all acts and omissions committed . . . by the defendant; and . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense).

As described in the PSR and the government's sentencing memoranda, Fleming repeatedly showed DOE 2 child pornography on his cellphone, and then had DOE 2 masturbate him and put his penis in DOE 2's mouth. This course of conduct spanned from January 2021 through March 2021. The Court is well within its discretion to consider Fleming's hands on sexual abuse of DOE 2 that occurred as part of the relevant conduct of the offense.

Second, the Court is also to consider the nature and circumstances of the offense as well as Fleming's history and characteristics when fashioning a sentence. It is necessary for the Court to consider Fleming's hands on sexual abuse of DOE 2 when considering these § 3553 factors.

4. **DOE 1**

Fleming seems to argue that, while it may be offensive to the United States that Fleming married DOE 1 when she was 16 years old, that is irrelevant to the Court's fashioning of a sentence in this case. That is incorrect. As has been explained in the government's sentencing

memoranda, DOE 1 told law enforcement in an interview that she did not want to marry Fleming, but she did so at her mother and Fleming's insistence to avoid legal trouble for Fleming. Forcing a minor to marry an adult man so he can continue to engage in sexual acts with the minor without fear of legal trouble should be extremely concerning to the Court and is certainly a relevant consideration for the Court to consider when fashioning a sentence that takes into account the nature and circumstances of the offense and Fleming's history and characteristics.

Fleming goes on to argue that U.S. Probation only included the statement about DOE 1's stepfather moving out because he believed DOE 1's mother was also engaging in a sexual relationship with Fleming to slander Fleming. It seems unlikely that U.S. Probation included this statement merely to slander Fleming, and rather, far more likely that U.S. Probation included this because it is relevant to describing the disturbing situation DOE 1 was trapped in as a minor when Fleming exploited her, a situation that made DOE 1 far more vulnerable to Fleming's exploitation. Forensic evidence in Fleming's cellphone confirmed that Fleming was engaged in a sexual relationship with both DOE 1 and her mother. Further, DOE 1 explained to law enforcement that DOE 1 and her mother both financially relied on Fleming when they lived with Fleming. This is all very relevant to demonstrate why DOE 1's mother would force DOE 1 to marry Fleming when DOE 1 was only 16 years old.

   5. **Mitigation Interview Assessment**

Fleming submitted to the Court a document entitled "Forensic Neuropsychological Report" ("the Report") as mitigation to support a sentence less than the appropriate 45-year sentence. The question Dr. Kaufman attempted to answer in the Report was "what, if any, neuropsychological, development, or other factors are present that might have a mitigating

effect, and as a result, assist the judge in formulating an appropriate sentence for Mr. Fleming?" Doc. 63-1. In coming to his conclusions, Dr. Kaufman interviewed Fleming's mother, father, and brother, and reviewed the PSR and medical records from Dona Ana County Detention Center. *Id*. It appears Dr. Kaufman did not review the forensic interview of DOE 2, nor the interview of DOE 1. Nor did Dr. Kaufman observe any of the disturbing images of child sexual abuse material on Fleming's devices.

Interestingly, according to the Report, Fleming's family seems unconcerned that Fleming showed child pornography to a nine-year-old child. Even though Fleming admitted to showing child pornography to nine-year-old DOE 2, Fleming's brother stated in the Report, "To be honest, I feel like we have a prosecutor and judge trying to make a name for themselves. I feel like this case is bullshit." Later in the interview, Fleming's brother stated, "I feel like someone is trying to make an example of Jason. A lot of this has left me scratching his head." Fleming's family seems hyper-focused on the production of child pornography conviction related to the child pornography produced with DOE 1, which they seem to think is perfectly acceptable since he married 16-year-old DOE 1, and utterly ignore the fact that Fleming admitted in his plea agreement that he showed child pornography to a nine-year old child. It is unclear what this could possibly tell the Court to mitigate Fleming's egregious conduct, but what it does evince, is that Fleming has a support system who is willing to ignore his abhorrent conduct of sexually exploiting children and imply to Fleming that he has done nothing wrong. One thing Fleming's brother did get correct, is that someone is trying to make an example of Fleming. That is the concept known as general deterrence, and that is an extremely important factor when the Court is fashioning a sentence under the § 3553 factors. The Court must fashion a sentence that will deter

others from committing atrocities against children like Fleming has committed, which is also known as general deterrence.

Ultimately, the Report attempted to articulate any mitigation to assist Fleming in requesting a sentence less than 45 years, and yet it fails to do so. Dr. Kaufman states in the Report, "I did not learn that Mr. Fleming has serious emotional problems…Simply stated, I did not find evidence of an emotional disorder that would help explain Mr. Fleming's illegal behavior." In the next paragraph, Dr. Kaufman states, "I do not believe a diagnosis of ADHD helps explain Mr. Fleming's prior illegal behavior; however, *I wonder* about the effect of the Adderall on his behavior, in conjunction with other opioid medications." (emphasis added). Dr. Kaufman's musings about wondering if medications impaired Fleming's judgment, without any evidence to support such an assertion, in no way mitigates Fleming producing child pornography with one minor victim and then showing another minor child pornography. Dr. Kaufman goes on to state, "Fleming might have dysfunction of the VPC are [sic] of his brain, which might help explain his poor decision-making in the past. But my testing does not prove that, which needs to be kept in mind." Dr. Kaufman goes on to explain that this could have been a false positive result or Fleming's VPC may function fine, and the test used does not adequately measure brain function. This seems to be a 28-page report that tells the Court almost nothing about Fleming and provides no justification for a below-guideline sentence.

6. **Conclusion**

For all the reasons outlined *supra*, the Court should overrule Fleming's objections to the PSR and sentence Fleming to 45 years in prison for all the reasons outlined in the Government's Objections to the Presentence Report and Sentencing Memorandum.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
Acting United States Attorney


*/s/ Electronically Filed 1/23/2024*
MATILDA McCARTHY VILLALOBOS
MARISA A. ONG
Assistant U.S. Attorneys
200 N. Church Street
Las Cruces, NM  88001
(575) 522-2304 - Tel.
(575) 522-2391 – Fax

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification to defense counsel of record.

*Electronically Filed 1/23/2024*
MATILDA McCARTHY VILLALOBOS
Assistant U.S. Attorney